UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HF CHLOR-ALKALI, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BEAZLEY INSURANCE COMPANY, INC., LIBERTY MUTUAL INSURANCE COMPANY, INTERNATIONAL INSURANCE COMPANY OF HANNOVER LTD, and CONVE & AVS, INC., <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT** |

Plaintiff HF CHLOR-ALKALI, LLC hereby alleges against Defendants, BEAZLEY INSURANCE COMPANY, INC., LIBERTY MUTUAL INSURANCE COMPANY, and INTERNATIONAL INSURANCE COMPANY OF HANNOVER LTD (collectively, "Insurers"), and Defendant CONVE & AVS, INC. as follows:

**THE PARTIES**

1.      Plaintiff, HF Chlor-Alkali, LLC ("Plaintiff" or "HFCA"), is an Iowa limited liability company with its principal place of business in Indianapolis, Indiana.

2.      The members of HFCA and the states of which they are citizens are:

| Member | City & State of Citizenship |
|---|---|
| Timothy M. Harris | Indianapolis, Indiana |
| Joseph E. Ford | Winchester, Indiana |
| William J. Huff, II | Beech Grove, Indiana |
| Scott G. Paris | Carmel, Indiana |

4846-4475-0666.v5

| | |
|---|---|
| Lee G. Polk | Steger, Illinois |
| Bankers Life and Casualty Company | State of Incorporation: Illinois<br>Principal Place of Business: Chicago, Illinois |
| Washington National Insurance Company | State of Incorporation: Indiana<br>Principal Place of Business: Carmel, Indiana |
| Colonial Penn Life Insurance Company | State of Incorporation: Pennsylvania<br>Principal Place of Business: Philadelphia, Pennsylvania |

3.     Plaintiff is therefore deemed a citizen of Indiana, Illinois, and Pennsylvania for diversity jurisdiction purposes.

4.     Upon information and belief, Defendant, Liberty Mutual Insurance Company ("Liberty"), is incorporated pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

5.     Upon information and belief, Defendant, Beazley Insurance Company ("Beazley"), is incorporated pursuant to the laws of the State of Connecticut, with its principal place of business in Farmington, Connecticut.

6.     Upon information and belief, Defendant, International Insurance Company of Hannover LTD ("Hannover"), is a citizen and resident of Germany, and has its principal place of business at 10 Frenchurch Street, London EC3M 3BE, United Kingdom.  Upon information and belief, Hannover is a foreign insurer approved to write business on an excess and surplus lines basis in all U.S. states and affiliated territories, including Iowa.

7.     Each of the Insurers transacts business in the State of Iowa.  This lawsuit arises from the Insurers' transaction of such business.

8.     Upon information and belief, Defendant, Conve & Avs, Inc. ("Conve"), is incorporated pursuant to the laws of the State of Florida, with its principal place of business in

Miami, Florida.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1332(a)(l) and (a)(2) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.     Venue is proper in the Southern District of Iowa under 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to the claim occurred therein.

## FACTUAL BACKGROUND

11.     On or about May 17, 2013, HFCA contracted with Conve for the construction of a Chlor Alkali Production Plant (the "Plant" or "Project") in Eddyville, Iowa (the "Conve Contract"). A copy of the Conve Contract is attached as **Exhibit A**.

12.     Pursuant to the Conve Contract, Conve, as SELLER, agreed to design and build the Plant for HFCA for the production of caustic soda, chlorine, hydrochloric acid ("HCl"), and sodium hypochlorite. *See* Conve Contract, § 2.1.9.

13.     The Conve Contract required Conve to perform the Engineering, Procurement, Module Fabrication, the Civil Work and Installation of the Plant. *Id.* at §3.3, *et seq*. and Annex I Technical Scope of Work.

14.     Article 24 of the Conve Contract required Conve to "put in place and maintain through at least Acceptance of the Project" insurance coverage "[w]ritten by U.S. carriers, on U.S. policy forms . . . ." Conve Contract, at ¶ 24.1.

15.     Conve also specifically agreed that it "has knowledge and experience superior to [HFCA] regarding the design, engineering, construction and operation" of all components of the

Plant and agreed that Conve "shall have the primary responsibility for . . . . resolving . . . claims relating to the Equipment." *Id.* at ¶ 6.1.1(b).  "Equipment" is defined as "items of equipment and machinery to be supplied to [HFCA] by [Conve] as provided in" the Conve Contract.  *Id.* at Article 1.

16.     Conve completed the design and most of the construction phases of the Project, but did not complete the Plant.

17.     In November 2015, after the design work and the majority of construction on the Plant was completed, but prior to occupancy or the Plant being placed into commercial service, HFCA conducted startup, commissioning, and other forms of testing ("hot testing") at the Project.

18.     During hot testing, a series of accidental explosions occurred within the burners, as well as ruptures within piping and other equipment that damaged property at the Project.

19.     In November 2015, freezing events also caused damage to piping and other components of the Plant.

20.     In December 2015, leaks on lines and damage to the HCl tanks identified during hot testing required HFCA to transfer HCl to rail cars via the HCl rail line.  However, in the course of the transfer an improperly closed valve caused a shockwave to reverberate upstream through the HCl rail line piping, resulting in substantial damage to other piping, joints, and components throughout the connected piping.

21.     Because of the resulting damage to the HCl rail line, HFCA incurred significant costs to repair the damages to the various rail line components. As a result of the physical property damage to the Project, HFCA also has incurred Delay in Startup losses.

22.     At the outset of the Project, Conve obtained builders risk insurance from the Insurers.  Liberty issued Policy Number 3C AAUMGD 001 (the "Liberty Policy"); Beazley

issued Policy Number V0113413PNB (the "Beazley Policy"); and Hannover issued Policy

Number TRU2013020142 (the "Hannover Policy").  A copy of the Liberty Policy is attached as

**Exhibit B**; a copy of the Beazley Policy is attached as **Exhibit C**; and a copy of the Hannover

Policy is attached as **Exhibit D**.

23.     While the Insurers issued separate policies, coverage under each of the policies is

determined based on the Liberty Complete Value Builder's Risk Policy form (the "Policy

Form"), which is attached and made a part of each of the Insurers' respective policies.  The

Policy Form identifies limits of $141,100,000 per occurrence and covers losses incurred during

the period from June 21, 2013, to December 30, 2015.  *See* Policy Form, Endorsement No. 5.

24.     The Insurers also agreed to be severally liable for losses under the Policy Form.

Specifically, the Insurers agreed to bear responsibility for the following percentages of any

covered liability:  Liberty, 50%; Beazley, 30%; and Hannover, 20%. *See* Liberty Policy, § E;

Beazley Policy, Participation Endorsement; Hannover Policy, TRU Supplemental Policy

Declarations, § E.

25.     Conve is the Named Insured under the Policy Form, and owners, contractors, and

subcontractors of every tier, including HFCA, are Additional Insureds.  *See* Policy Form, Policy

Declaration; § A.

26.     The Policy Form also states that Conve "shall be deemed the sole and irrevocable

agent of each and every Additional Insured hereunder for the purpose of . . . adjusting, settling,

and compromising claims; and/or the manner in which and to whom payments hereunder shall be

made." *Id.*

27.     The insuring agreement of the Policy Form states that it provides coverage

"against all risks of direct physical loss of or direct physical damage to insured property while at

the Location of the Insured Project . . . ." *Id.* at Coverages, § A Insuring Agreement.

28.     "Insured property" is defined to include all "Permanent Works" and "Temporary Works at the Location of the Insured Project." *Id.* at § B Insured Property.

29.     The "Insured Project" is the "HF Chlor Alkali Plant," the "Location" is defined as "Latitude 41.13551 & Longitude -92.659188, Eddyville, IA 52553," and the Insured Project is described as "[c]onstruction of a new chlor alkali plant." *Id.* at Policy Declarations, § C(1)-(3).

30.     By endorsement, the Policy Form also provides coverage to HFCA for Delay in Start Up, with a Limit of Liability of $32,500,000.  The endorsement designates HFCA as the Named Insured for Delay in Start Up coverage.  *Id.* at Delay in Start Up Endorsement, Declarations.

31.     The Delay in Start Up coverage Insuring Agreement provides that the Insurers must indemnify HFCA (as the Named Insured) for loss sustained for Supply Agreement Payments incurred during the delay when the delay is caused by direct physical loss or direct physical damage to insured property.  The Delay in Start Up coverage also requires the Insurers to indemnify the HFCA for expenditures that are necessarily incurred for the purpose of reducing the loss amount under the endorsement.  *Id.* at Insuring Agreement, § 1-2.

32.     "Delay" is defined in the Delay in Start Up endorsement as "[t]he period of time between the anticipated date of completion and the actual date on which commercial operations or use and occupancy can commence." *Id.* at Definitions, § 3.

33.     "Supply Agreement Payment" is defined in the Delay in Start Up endorsement as:

A.     HF Payment to Cargill on Caustic production delivery shortfall = Caustic Market Price minus contractual price times daily usage.

B.     HF Payment to Cargill on HCL 35% production delivery shortfall = HCL

35% Market Price minus contractual price times daily usage.

*Id.* at Definitions, § 2.

34.     The "direct physical loss of or direct physical damage to" the Project, including the damages incurred to the HCl rail line and other portions of the Plant resulting from various accidents, explosions and weather events, triggers coverage under the insuring agreement of the Policy Form and Delay in Startup Endorsement, and no Policy exclusion applies to prevent coverage for the costs, expenses, and losses sustained by HFCA.

35.     HFCA submitted a claim to the Insurers, seeking coverage for certain costs, expenses, and losses sustained as a result of the damage to the Project, including reasonable and necessary costs incurred to make temporary repairs and for physical damage resulting in Delay in Start Up and other losses suffered by HFCA from November 2015 to the present.

36.     The Insurers have refused to provide coverage under the Policy Form, claiming that the certain exclusions serve to bar coverage for all of HFCA's claimed losses.

37.     Conve, as the Named Insured under the Policies and pursuant to the terms of the Conve Contract, is required to adjust and resolve the property damage loss HFCA sustained at the Project on HFCA's behalf.

38.     Conve has failed to meet its obligation to do so.

39.     As a result of Insurers' wrongful refusal to reimburse HFCA and of Conve's breach of its obligations under the Conve Contract, HFCA has commenced this action.

## CAUSES OF ACTION

### Count I: Declaratory Judgment
### (Against the Insurers)

40.     HFCA realleges and incorporates by this reference each and every allegation of paragraphs 1-39 as though set forth fully herein.

41.     Upon information and belief, the Insurers dispute one or more of the allegations herein, including, without limitation, the allegation that the Policy Form covers the costs incurred to repair the damage at the Project and losses suffered because of delay in start up.

42.     By reason of the foregoing, an actual and justiciable controversy exists between HFCA and the Insurers regarding their respective rights and obligations under their respective Policies and the Policy Form, including, but not limited to, the Insurers' obligation to indemnify HFCA in connection with the damage to the Project.

43.     An Order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

WHEREFORE, HFCA respectfully requests that the Court enter a declaratory judgment in its favor and against Insurers, *inter alia*, that:

a.   The insuring agreement of the Policy is triggered by the physical loss and damage to the Project;

b.   The Insurers owe an ongoing obligation to indemnify HFCA for Delay in Start Up losses and the physical loss and damage to the Project;

c.   No exclusions bar coverage for the damages sought by HFCA; and

d.   Plaintiffs are entitled to recover from the Insurers all fees and costs incurred in pursuing this action.

### Count II: Breach of Contract
### (Against the Insurers)

44.     HFCA realleges and incorporates by this reference each and every allegation of paragraphs 1-43 as though set forth fully herein.

45.     There has been physical loss or damage to the Project that has resulted in substantial losses, thereby triggering coverage under the Policy Form.

46.     The Insurers' respective Policies and the Policy Form are valid and binding agreements.

47.     HFCA is an Additional Insured under the Policy Form for property damage loss, and the Named Insured under the Policy Form for Delay in Start Up loss.

48.     The Insurers have an obligation to indemnify HFCA against physical loss or damage to the Project and Delay in Startup losses.

49.     The Insurers have breached their obligation to HFCA.

50.     Upon information and belief, all obligations under the Policy have been satisfied, including the payment of premiums and provision of timely notice of claims, or they have been waived, released, or are the subject of an estoppel.

51.     As a direct, proximate, and foreseeable result of the Insurer's refusal to fulfill their coverage obligations to HFCA, and other breaches, HFCA has incurred damages, and will continue to incur substantial fees, costs, and expenses.

52.     As a result of the aforementioned breaches, the Insurers are liable to HFCA for money damages incurred by HFCA to the extent covered by the Policy Form in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

WHEREFORE, HFCA respectfully requests that the Court enter judgment in its favor and against Insurers for compensatory damages in an amount to be determined at trial, plus interest, costs, and such other relief as the court determines is appropriate.

### Count III: Breach of Contract
### (Against Conve)

53.     HFCA realleges and incorporates by this reference each and every allegation of paragraphs 1-52 as though set forth fully herein.

54.     As described above, Conve was required under the Conve Contract to place and

maintain insurance, and had primary responsibility for resolving claims relating to the Equipment at the Plant, including HFCA's claim for damages under the Policy Form.

55.     Conve is HFCA's agent under the terms of the Policy Form for the purpose of adjusting, settling, and compromising claims for property damage, and for determining to whom payments under the Policy Form for property damage should be made.

56.     Conve has failed to adjust the claim with the Insurers on HFCA's behalf and has breached its obligations under the Conve Contract.

57.     HFCA is informed and believes, and on that basis alleges, that Conve breached the Conve Contract by engaging in the conduct described above.

58.     As a direct, proximate, and foreseeable result of Conve's refusal to fulfill its obligations to HFCA under the Conve Contract to provide insurance and resolve claims, HFCA has incurred damages, and will continue to incur substantial fees, costs, and expenses.

59.     As a result of the aforementioned breaches, HFCA is entitled to a money judgment against Conve for damages in an amount to be determined at trial, and for such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Conve for compensatory damages in an amount to be determined at trial, plus interest, costs, and such other relief as the court determines is appropriate.

### DEMAND FOR JURY TRIAL

HFCA hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, HFCA demands judgment against Liberty, Beazley, Hannover, and Conve as follows:

10

a.  Entering declaratory relief, in accordance with the Count I above, and as otherwise appropriate based on the claims and defenses of the parties;

b.  Awarding money damages, in an amount to be proven at trial;

c.  For attorneys' fees and costs incurred pursuing this action;

d.  For prejudgment and post-judgment interest; and

e.  For such other and further relief that this Court deems just and equitable.

Respectfully submitted,

*/s/Christopher P. Jannes*
Christopher P. Jannes, AT0003917
Tara Z. Hall, AT0003152
DAVIS, BROWN, KOEHN, SHORS & ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa  50309
Telephone:  515-288-2500
Facsimile:  515-243-0654
Email:  chrisjannes@davisbrownlaw.com
Email:  TaraHall@davisbrownlaw.com

ATTORNEYS FOR PLAINTIFF, HF CHLOR-ALKALI, LLC